```
1                   UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK
2

3    ------------------------------------X
                                        :
4    EMANUEL A. TOWNS,
                                        : 14-CV-06809 (KAM)
5              Plaintiff,              :
          v.                           :
6                                       : January 30, 2015
     CORNERSTONE BAPTIST CHURCH, et al, : Brooklyn, New York
7                                       :
               Defendants.              :
8    ------------------------------------X

9

10        TRANSCRIPT OF CIVIL CAUSE FOR INITIAL CONFERENCE
              BEFORE THE HONORABLE LOIS BLOOM
11              UNITED STATES MAGISTRATE JUDGE

12   APPEARANCES:

13   For the Plaintiff:          EMANUEL A. TOWNS, Pro Se

14   For the Defendants:         TODD A. FISHLIN, ESQ.
                                 Fishlin & Fishlin, PLLC
15                               100 S. Bedford Road, Suite 340
                                 Mount Kisco, New York 10549
16
                                 ALEXANDER MACRAE NOBLE, ESQ.
17                               JAMES F. HORTON, ESQ.
                                 New York City Law Department
18                               100 Church Street, Room 3-310
                                 New York, New York 10007
19
                                 DAVID STANNARD O'LOUGHLIN, ESQ.
20                               Attorney General of the State of
                                  New York
21                               120 Broadway
                                 New York, New York 10271
22

23
     Court Transcriber:          MARY GRECO
24                               TypeWrite Word Processing Service
                                 211 N. Milton Road
25                               Saratoga Springs, NY 12866


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

2

1    [Proceedings began at 10:15 a.m.]

2         THE CLERK:  Civil Cause For Initial Conference,

3    docket number 14-CV6809, <u>Towns v. Cornerstone Baptist Church,</u>

4    <u>et al</u>.  Will the parties please state their names for the

5    record?

6         MR. TOWNS:  Plaintiff Emanuel A. Towns.

7         MR. FISHLIN:  Defendant Cornerstone Baptist Church,

8    Todd Andrew Fishlin; Fishlin and Fishlin, 7 -- I'm sorry, 100

9    South Bedford Road, Suite 340, Mount Kisco, New York 10549.

10        MR. NOBLE:  Alexander Noble -- oh, excuse me.

11   Alexander Noble here for the City of New York, also the

12   Corporation Counsel, 100 Church Street, New York, New York

13   10007.

14        MR. HORTON:  James Horton also from the Office of

15   the Corporation Counsel, Your Honor.

16        MR. O'LOUGHLIN:  Stan O'Loughlin, Assistant Attorney

17   General here representing the attorney general's office pro

18   se.

19        THE CLERK:  The Honorable Lois Bloom presiding.

20        THE COURT:  Good morning, Mr. Towns.  How are you

21   this morning?

22        MR. TOWNS:  Good morning, Your Honor.  I'm fine,

23   thank you, ma'am.  How are you?

24        THE COURT:  Good, thank you.  And good --

25        MR. TOWNS:  Should I stand or remain seated?

1            THE COURT:  The attorneys are taught to stand.

2  That's why Mr. Horton said when you're addressing the court

3  they're taught to stand, but it's no disrespect to me.  You

4  can remain seated, sir.

5            MR. TOWNS:  Thank you, ma'am.

6            THE COURT:  It's good training and the city does it

7  right.  And good morning, Mr. Fishlin.  How are you today?

8            MR. FISHLIN:  Good morning, Your Honor.

9            THE COURT:  You don't have -- now we're going to all

10  be standing up.

11            MR. FISHLIN:  I'm an attorney and attorneys should

12  stand.

13            THE COURT:  Yes, well that is the proper way and

14  that's why Mr. Horton nudged his colleague, Mr. Noble.  Mr.

15  Fishlin traveled the furthest here today.  How are you, Mr.

16  Noble and Mr. Horton?

17            MR. NOBLE:  We're good, Your Honor.

18            THE COURT:  And Mr. O'Loughlin?

19            MR. O'LOUGHLIN:  Fine, Your Honor.

20            THE COURT:  I don't know that your mic's working.

21  Do you have a green light, or can you bring it closer?

22            MR. O'LOUGHLIN:  It looks green.

23            THE COURT:  Now it sounds better.  Yes, bring it

24  closer to you.  And Mr. Towns, I'm not neglecting, I don't

25  want to disrespect.  These are your family members?

4

```
 1              MR. TOWNS:  Oh, no.

 2              THE COURT:  Friends of yours?

 3              MR. TOWNS:  Friends of mine.

 4              THE COURT:  Okay.

 5              MR. TOWNS:  This is Reverend Claudette Davis and Mr.

 6  Ruben Graston [Ph.].

 7              THE COURT:  Okay.  Good morning to both of you.

 8              REV. DAVIS:  Good morning.

 9              MR. GRASTON:  Good morning.

10              THE COURT:  I didn't want to ignore you at the

11  table.

12              This is the initial conference and what had happened

13  was you filed the case and then the various defendants asked

14  under Judge Matsumoto in this court -- I'm a magistrate judge.

15  We're paired, magistrate judge and district judge.  So Judge

16  Matsumoto is the assigned district judge to the case and I am

17  the assigned magistrate judge.  And the magistrate judge deals

18  with all pre-trial matters and then if the case goes to trial,

19  the district judge deals with the trial.

20              Since the defendants have requested to move against

21  the complaint instead of answering the complaint, the normal

22  course would be that there would be a motion made and you

23  would have to respond to that motion and Judge Matsumoto

24  would schedule their briefing of the motion and your briefing

25  of the motion.  But because you are representing yourself, Mr.
```

5

1    Towns, and because I believe that it's in everybody's interest

2    to come into court, hear a little bit about what this is all

3    about, and because you have at some point requested to amend

4    and the defendants should know that in this circuit that leave

5    to amend should be liberally granted and that certainly in a

6    pro se case, leave to replave should be granted before a case

7    is dismissed and the cite is <u>Cuoco v. Moritsugu</u>, 222 F.3d 99

8    (2d Cir. 2000).  I could go on and give you other cites but

9    that's the lead cite.  And so I thought it was much better

10   that we all get together, that you get a chance to file an

11   amended complaint because if they're going to move to dismiss,

12   you should at least have a chance to amend what the case is

13   about.

14          Now, I did not get your amended complaint until this

15   morning, sir.  Because of the snowstorm I put off your filing

16   of the amended complaint because I didn't want you to be

17   trudging out in a blizzard to try to get your papers filed.

18   So I haven't had a chance to review your amended complaint and

19   it is quite lengthy.  And even though he only brought -- I

20   believe he gave one copy -- nobody got it?

21          MR. FISHLIN:  I didn't receive a copy, Your Honor.

22          THE COURT:  I have -- well, please give one copy to

23   the defendant's table.  Instead of making additional copies of

24   it, I'm going to get it filed on ECF and therefore I didn't

25   think it was in anybody's interest for me to make as many

6

1   copies to go over it.  Since it is quite lengthy, it's 120 --

2            MR. TOWNS:  If I may, Your Honor, it's 138 pages.

3            THE COURT:  Okay.  138 pages of exhibits.  So

4   instead of making the copies, I figured I could get it filed

5   on ECF.  And I haven't had the chance to review it.  But Mr.

6   Towns, I did read the original complaint and the complaint --

7   and I'm going to boil it all down because we don't have the

8   time to go line by line.

9            You reinitiated your participation in Cornerstone

10  Baptist Church's functions late in 2011.  You applied for

11  formal membership in May of 2012.  In June of 2012 your

12  membership application was suspended but you continued to

13  attend functions at Cornerstone Baptist in 2013 but you were

14  never approved as a member of the church.  And again, all of

15  these allegations are taken straight from your original

16  complaint and I have not yet had the time to look at your

17  amended complaint.  You say during that time you initiated

18  plans to have Cornerstone Baptist comply with Article 12 of

19  the church's bylaws which requires a certified accountant

20  examining the accounts of the church and that Cornerstone

21  Baptist did not initiate the accountant, and that on September

22  29, 2013 you were scheduled to present at the Sunday School

23  worship service and during that presentation you criticized

24  the firing of a church administrator.

25            You then say on October 10, 2013 the Cornerstone

7

1  Baptist Church issued a letter to you prohibiting you from

2  entering the church or its locations for any reason.  You

3  attached that letter as Exhibit A to your original complaint.

4  And the letter states that the decision to prohibit your entry

5  was approved by the Board of Deacons with the cooperation and

6  input from the Kings County District Attorney's Office and the

7  81st precinct, and concludes that if you enter the church

8  you'll be arrested for trespass.  And you allege that the

9  NYPD's presence at Cornerstone Baptist Church on October 13,

10 2013 and October 20, 2013 was to arrest or otherwise restrain

11 you.

12        You filed your complaint here November 19, 2014.

13 You served defendants.  The case was referred to me by Judge

14 Matsumoto for all pretrial purposes.  Counsel from the City

15 Law Department and the Attorney General's Office, after the

16 church defendants had written saying that they intended to

17 move had written to say that they joined in that request.

18 Their arguments, which we'll get to in a moment, are that this

19 is a church and it's not state action and that the individual

20 defendants that you're naming, Attorney General Schneiderman,

21 the mayor, Raymond Kelly the previous commissioner, William

22 Bratton the current commissioner, the DA's are all immune to

23 the suit.  You requested on January 21st to amend your

24 complaint and I directed you to bring the copies of the

25 complaint to the courthouse but adjourned that deadline

8

1   because of the blizzard.  And you said in your letter that you

2   intended to amend to add new federal and state claims

3   including Section 1983 state created threat or danger and

4   false arrest claims.

5         So Mr. Towns, why don't you tell me, knowing that

6   I've read your original complaint -- so I don't want you to go

7   and reiterate everything that I just put on the record, why

8   don't you tell me why did you decide to bring this case and

9   what is it that you're hoping to accomplish here, sir.

10        MR. TOWNS:  All right.  May I inquire whether or

11   not the court received my responses to the motion letters

12   from --

13        THE COURT:  I did receive that but again, I'm not

14   going line by line --

15        MR. TOWNS:  Yes.

16        THE COURT:  -- through their items or yours, but

17   yes, we did receive it.

18        MR. TOWNS:  Okay.  So in essence, the threat placed

19   me personally in jeopardy and in danger and as I explained or

20   set forth in my complaint --

21        THE COURT:  The threat that you'd be arrested if you

22   come into the church.

23        MR. TOWNS:  Correct.  And I had the right to come

24   into the church.

25        THE COURT:  Why do you have a right to go into a

1   private church?

2           MR. TOWNS:  In terms of -- when you say private,

3   it's a public accommodation.  It's a church open to the

4   public.

5           THE COURT:  You're not allowed to discriminate

6   against people based on their race, but it's still private

7   property.  The church is open for business but it is still

8   private property.

9           MR. TOWNS:  But they are not entitled to say I

10  cannot come based upon a religious animus or retaliate against

11  me for the fact that I made a religious proclamation or

12  protest.

13          THE COURT:  I don't know what they can or they

14  can't, but why don't you tell me what this is about because

15  again, I'm a little bit lost.  Usually people go to church

16  because they want to be part of that congregation, they want

17  to worship there.  I don't know how this all got started but

18  evidently I'm not seeing the whole picture because usually

19  people don't come in and ask for there to be an accounting

20  made.  I don't know what the background is here or what it is

21  that you're trying to accomplish.  I understand you brought a

22  lawsuit, sir.

23          MR. TOWNS:  Yes, ma'am.

24          THE COURT:  That I understand.  I read the

25  allegations in the lawsuit.  But again, I don't understand.

1  You seem like a very nice man, very polite.  I don't

2  understand how we came to this.

3          MR. TOWNS:  Well, I was asked, as I stated in the

4  complaint, I was asked to speak on the topic, a religious

5  topic, set forth by the Apostle Paul.  I made the decision

6  because I had known Ms. Walls virtually all my life.  She was

7  my sister in age and so I knew her during the iteration when

8  [indiscernible].  She assisted me when I [indiscernible].  So

9  the fact that she was just ousted was something that I was

10  really disturbed by and there were other people who were

11  really disturbed by it.  I didn't do anything about it until I

12  was given the privilege of speaking on the topic of where are

13  you now?  We're all in this together.  And because we're in

14  this together, the Apostle Paul said, I said what was done to

15  Mrs. Walls was totally outrageous and disrespectful.  I was

16  then personally attacked essentially 20, 25 minutes later by

17  Mrs. Webb, Defendant Webb.

18          THE COURT:  Personally attacked meaning with --

19          MR. TOWNS:  With words.

20          THE COURT:  With words.  Thank you.

21          MR. TOWNS:  That's also set forth in the complaint

22  that that occurred in the Sunday School class before Dean

23  Washington and other class members.  Several days later I then

24  received -- I shouldn't say several days later.  11 days later

25  I then received a notice saying you can't come here anymore.

1   Well, I grew up there and I enjoyed my class there.  I

2   explained how I was given the privilege over and over by Dean

3   Washington to provide [indiscernible] back on October 17th I

4   was schedule to lead the class on that day.  So I was into

5   that.  I was something that I genuinely enjoyed.

6          So then the defendants, the Cornerstone defendants,

7   made the election that we can't have him here anymore.  This

8   is not the first time that I've criticized at Cornerstone

9   Baptist Church.  I did in my previous innovation at

10  Cornerstone Baptist Church raise issues that the deacons of

11  the church, the leaders of the church are solely men and I

12  said how could that be?  From a group of people who have been

13  discriminated against, how could you not include everyone in

14  your leadership program?  So that was so unusual.

15         The fact that they said listen, you certainly can't

16  come here anymore because we don't like what you said is

17  retaliation and it is not the only thing that the pastor and

18  the deacons have done.  I detailed how they have disrespected

19  people such as the lady who's sitting next to me, Reverend

20  Claudette Davis.  So I said it needs to stop.  And since I had

21  a background that allowed me to analyze and bring this

22  lawsuit, I said I would do that.

23         THE COURT:  Thank you, sir.  Lily, could you get Mr.

24  Towns a bottle of water?  I think his throat is dry.

25         MR. TOWNS:  Thank you, Your Honor.

1          THE COURT:  Sure.  Mr. Towns, I will review the

2    amended complaint.  You can be seated, sir.  And I appreciate

3    the comments that you put on the record.  I am not going to

4    respond to everything you said.  I'm just going to try to give

5    you my human to human not judging your case, okay?  The

6    federal courts are courts of limited jurisdiction.  They only

7    govern cases where congress has passed a law that provides a

8    remedy.  Okay?  You have brought -- I'm sorry we don't have

9    cups.  Is that okay, sir?

10         MR. TOWNS:  Thank you.

11         THE COURT:  Sure.  The types of problems that exist

12   in the world, not every single problem is addressed by federal

13   law that's been passed by congress and the courts can only

14   hear cases that arise under the federal law or cases between

15   citizens of different states that involve more than $75,000.

16   That's not what this is about.  This is not a diversity case.

17   This case, you're saying that the federal court has power over

18   this case because it's a civil rights action.  The civil

19   rights laws which were passed in the reconstruction period

20   after the Civil War and laid dormant for over 100 years, it's

21   a very short statute.  It says every person who acting under

22   color of state law, and I'm compressing it more, causes or

23   subjects somebody to a violation of their constitutional

24   rights can be brought into court.

25         Part of what the defendant's initial letters to the

1   court were about is that even if these deacons are doing

2   exactly what you're saying, excluding people, trying to punish

3   you for speaking out against them or some action that they

4   took, the guarantees under the Civil Rights Act are guarantees

5   basically that the citizens will have redress against the

6   government, not that citizens will have redress against their

7   neighbors or their fellow church members.

8           I don't know how this short time I can give you the

9   full -- I will let you speak again, sir, but --

10          MR. TOWNS:  Sure.

11          THE COURT:  -- but basically what you --

12          MR. TOWNS:  Excuse me.  Yes, ma'am.

13          THE COURT:  It's fine.  Basically what you are

14  trying to do is say because they called in the police or

15  because they told you that if you came into their building

16  they'd have you arrested that that was a violation of your

17  constitutional rights and you're trying to get in a lot of, at

18  least in the original complaint and it doesn't look like

19  you've dropped all that many people out of the amended

20  complaint because I see there that you still have the ex-

21  mayor, the new mayor, the old commissioner, the new

22  commissioner, all of those, and forgive me for saying it

23  colloquially, but they are all top dogs.  They weren't

24  personally at Cornerstone Church.  They didn't personally do

25  anything to you.  You're naming them because they're the top

14

1  dog.  They're the mayor, the former mayor.  Under Section 1983

2  even if you were trying to claim that there was state action

3  taken against you, which is a problem here because most of the

4  people are just individuals who are members of the church, so

5  you can't bring a civil rights action against your neighbor

6  even if your neighbor is doing things that violate your

7  constitutional rights because they're not acting under color

8  of state law.

9         So the reconstruction of your civil rights statute

10 42 United States Code Section 1983 was passed to give citizens

11 remedies and redress against government action, not against

12 individuals.

13        You're then naming Schneiderman, Bloomberg, Kelly,

14 Bratton, et cetera because they're the people that run those

15 various parts of government.  But Section 1983 says every

16 person who acting under color of state law.  Unless

17 Schneiderman, Bloomberg, De Blasio, Kelly, and Bratton were

18 standing at Cornerstone Church and did something personally to

19 you, the reason why you're naming them is because of their

20 official capacity.  Their official capacity is not something

21 that you can -- you can't bring a suit against somebody, the

22 supreme court has said you cannot bring a suit against

23 somebody in their official capacity.  You might if they were

24 standing there and did something to you be able to sue them,

25 but you cannot sue them just because they are the top dog.

1          So these were some of the problems that were brought

2    to your attention by the letters from the Attorney General's

3    Office, the city, and the Cornerstone members.  And again, I

4    haven't read your amended complaint, but seeing that you're

5    naming pretty much the same actors I imagine there's going to

6    be some of the same problems.

7          MR. TOWNS:  If I --

8          THE COURT:  Yes, sir.

9          MR. TOWNS:  Oh.  Working backwards for a moment, I

10   did recite Jews for Jesus, the Second Circuit held

11   individuals, specifically held the individual entity and the

12   persons involved liable and denied summary judgment but did

13   say there was a lawsuit, a viable lawsuit.

14         THE COURT:  Now again, I have not recently read Jews

15   for Jesus but my recollection of the case was it was banning

16   certain types of proselytizing, for lack of a better word, in

17   public spaces.  And again, a street corner is a public space.

18   There's also a Hare Krishna case where Hare Krishnas used to

19   be at the airports.  And again, being in public spaces is a

20   different matter, sir, than being on private property.  So if

21   you were in your next door neighbor's house and you got into a

22   big dispute because you told him he was a liar and a cheat and

23   he called the police and the police came and he got you

24   removed from his house and you were saying I was just telling

25   him the truth, he was a liar and a cheat, do you think you'd

1   have a case here because you had the right to tell him the

2   truth to his face in his house?  It's private property.  The

3   church is also -- again, what if somebody came in and start

4   talking about Hitler did the right thing?  Should the church

5   have no right to do something if they disagree with the

6   speaker?

7            MR. TOWNS:  Well, the issue of private property is

8   not applicable to this particular situation.  Jews for Jesus,

9   just to remind the court, had to do with an attempted boycott

10  against the Jews for Jesus organization by Jewish persons who

11  disagreed with their particular theology.  And the Second

12  Circuit specifically said the acts by the individuals to

13  boycott was liable, or --

14           THE COURT:  Again, sir, I'll read your papers --

15           MR. TOWNS:  Okay

16           THE COURT:  -- and I'll read your argument, but what

17  I'm not getting here is this church for whatever reason, and I

18  haven't asked them to say a thing yet --

19           MR. TOWNS:  Yes.

20           THE COURT:  -- because I don't want this to go into

21  a he said/he said type of thing.  They have a different

22  opinion of what went on I'm sure than what you say went on.

23           I'm going to take what you say as the truth that you

24  were there, you said things that you believed needed to be

25  said about how they treated another former member and that as

1  a result you became persona non grata and they wanted to get

2  rid of you from the church, and that they sent you a letter

3  saying you're no longer welcome here and that if you come here

4  you'll be arrested.  I'll take all of that to be true.  And

5  that they were doing that because of what you said during your

6  class.

7        MR. TOWNS:  And essentially what I am saying, Your

8  Honor, is that retaliation for First Amendment religious

9  speech, First Amendment speech, First Amendment protest --

10        THE COURT:  The First Amendment only applies to the

11  government.  It does not apply to the church members.  It only

12  applies to the Government.  The First Amendment says the

13  Government shall make no law abridging the freedom of speech.

14  It does not say that in let's say the workplace.  So if Google

15  or Yahoo wants to say nobody can mention the word Facebook or

16  nobody could talk about religion, we don't want anybody to

17  mention any world religion, private individuals, private

18  organizations are not the government.

19        MR. TOWNS:  Accepting that to be the case, when

20  Google reaches out to the police or to state actors according

21  to Starks they become --

22        THE COURT:  They do not.

23        MR. TOWNS:  Well, that's what Starks --

24        THE COURT:  Because every person who calls the

25  police would then become a state actor.  Anybody who calls the

1 police would then have state action on their head and that's

2 not what Starks stands for.  If you're talking about a

3 conspiracy, that requires more than just calling the police.

4         MR. TOWNS:  And there was more.

5         THE COURT:  Which is?

6         MR. TOWNS:  The letter, the --

7         THE COURT:  The letter was not part of the

8 government, was it?

9         MR. TOWNS:  I agree with you.  But it says that we

10 have reached out to the government, they have provided us

11 information.  I would argue a plan to effectuate making sure

12 that Mr. Towns does not reappear.  And then we have cooperated

13 with you to implement this plan by having the police come to

14 the location to enforce by whatever means they deem necessary

15 Mr. Towns not coming to our church.

16         THE COURT:  What if it wasn't you but it was

17 somebody else who came to the church who -- let's not say it

18 was a matter of political concern like you say, but came and

19 started yelling expletives in the middle of a service and they

20 wanted to get rid of that person because that person was

21 disrupting their church, would they have the right to say

22 you're no longer welcome in the church, you can't come back

23 here anymore, and if you come we're going to call the police?

24         MR. TOWNS:  And that's a factual dispute.  They have

25 claimed specifically that I trespassed.

1       THE COURT:  No.  They were saying if you came back

2  to the church that you'd be arrested for trespass.

3       MR. TOWNS:  Yes, correct.  The arrest for trespass

4  is that you say I cannot come back does not equate to a

5  violation of any law.  The fact that I walk into the church

6  does not violate the law.

7       THE COURT:  Again, if it's private property, which

8  again I'm assuming that the church is private property because

9  it's not City Hall, it's not a public space -- it's public in

10  the sense that the public uses it, but if they wanted to close

11  it for any reason because they wanted to have a private

12  ceremony or they wanted to lock the doors and not let people

13  in, again, the church is not the government.

14       MR. TOWNS:  Well, you'll decide the issue.  The

15  point that I'm making is that when you invite the government

16  to act on your behalf --

17       THE COURT:  But then everybody who calls the police,

18  Mr. Towns, for any matter, whether it's deserving or not, that

19  would become state action and that's not what the law says.

20  Anybody who calls the police for good or bad reason, then they

21  would become a state actor under your theory.

22       MR. TOWNS:  But that's not what I'm arguing.  I am

23  saying that it was the state municipal defendants who

24  coordinated the entire event.

25       THE COURT:  Let me just ask Mr. Noble --

1        MR. NOBLE:  Yes, Your Honor.

2        THE COURT:  -- are you prepared to speak to any of

3   this?

4        MR. NOBLE:  Well, Your Honor, it doesn't appear that

5   Mr. Towns was ever arrested or encountered by the police.

6   After speaking with Mr. Fishlin last week, he represented to

7   me that there were no police officers outside the church.

8   However, he could probably explain more accurately what the

9   church's involvement was with police.

10       MR. FISHLIN:  Your Honor, I received a call from Mr.

11  Noble inquiring about the identity of police officers who were

12  attending the church on the dates in question.  I think it's

13  October --

14       THE COURT:  Were attending the church?

15       MR. FISHLIN:  Well, were out -- pardon me, were

16  outside of the church on the date in question, outside on the

17  sidewalk as alleged in the complaint.  I contacted the church

18  members who I'm speaking with.  I had them ask each other.

19  And the response was that no member of the church knew --

20  recalled calling the police to actually stand outside the

21  church at any point.  None recalled an actual presence of

22  police at any point.  And this is going to be their factual

23  dispute.

24       THE COURT:  What about the letter?  What about the

25  letter that Mr. Towns is referring to where he's saying that

1   there was some coordination between the church so that if he

2   did appear he was going to be arrested?

3            MR. FISHLIN:  I mean it's my understanding that as

4   you have said previously, you guessed that, is that they

5   called the local precinct in order to have some essentially

6   guidance as to whether or not they were in the right, or

7   legally within their rights to send this letter and whether or

8   not it could be a trespass if Mr. Towns were to enter into,

9   whether his license to do so had been revoked by them.  They

10  as far as I know did not receive the legal advice directly

11  from the district attorney or the police, but they were acting

12  on their own to say that it was their opinion that they could

13  have him arrested for trespass if he were to return while his

14  license to do so was revoked.

15           THE COURT:  How does it get to this point?  I mean

16  again, Mr. Towns attended this church.  There's disagreements

17  obviously between the people at the church about how things

18  were handled, who were the deacons, how they disrespected

19  somebody who had long time been a member of the church.  How

20  does it get to this point?  Why can't these matters be

21  resolved between the people who, you know, have a stake in

22  this church?

23           MR. FISHLIN:  Your Honor, it's just by reading of

24  the complaint but it seems that there was a sequence of events

25  where Mr. Towns either wished to have a joint concert with the

1  Ecumenical Boys Choir of Bedford Stuyvesant and there were

2  protocols within the church where approvals were necessary and

3  he was trying to work his way through those protocols to get

4  his approvals and he met with resistance and was never

5  ultimately approved in that particular public event.

6          In addition, there was a summer [indiscernible]

7  program that Mr. Towns was proposing to -- and I'm guessing

8  because I don't think it was in the complaint, to warn people

9  of the dangers of extremely hot weather during the summer,

10  stay cool, et cetera.  And this was sort of a public service

11  that he wished the church to tell its members.  And again, the

12  church has its own structure, its own protocols.  They went

13  through these protocols and again met with resistence.  I

14  don't think it was any one event that led us here.  I think it

15  was a series of bucking the hierarchy that led ultimately to

16  the request that he does not return.  Some of these incidents

17  were extremely public and insulting the church management in

18  front of the entire church about the decision to fire an

19  employee for example [indiscernible] the reverend in front of

20  the church.  People were supportive of the reverend at the

21  time and felt that it was disturbing to their practice of

22  religion to have such unrest.

23          And one more thing, Your Honor, there was an email I

24  believe sent at Mr. Towns' request, whether or not he sent it

25  individually I can't recall, called crisis Cornerstone about

1  the financial, the non-disclosure of financial information

2  coming from the church.  There's no actual allegation of any

3  impropriety or misuse of funds, et cetera, but there's just a

4  blanket "if they're not telling us, then there must be

5  something wrong" accusation and people were within the church

6  I believe were upset by all this and it interfered with their

7  harmonious practice of the religion and they decided that Mr.

8  Towns was the issue and it was not whether or not there was

9  financial disclosure or whether or not some [indiscernible]

10  was a good or a bad idea or whether or not the other program,

11  the Ecumenical Boys Choir program was a good idea.  It was

12  just the way he went about doing things that resulted in his -

13  -

14          THE COURT:  But Mr. Fishlin, again, I don't really

15  want Mr. Towns to have to respond to each of the things you

16  say and I appreciate that you've given me a little bit more of

17  what the church's situation is, but again, how hurtful that

18  somebody sent a letter from the church where they've been

19  attending instead of people in the church making an effort to

20  set down and resolve this as person to person.  Now it's a

21  federal court matter.  I'm trying to tell Mr. Towns it might

22  not be the right place to resolve this.  He's going to argue

23  wildly.  I'm not ready to argue law today because I haven't

24  read your amended complaint, sir.  I was trying to give you --

25  I've been a judge 13 years.  My area of expertise is actually

1  dealing with people who are unrepresented like yourself who

2  are bringing civil rights cases.  I'm trying to boil down a

3  lot.

4          I understand you're a real smart guy, you've read a

5  lot.  But in my mind again the problem here is your problem is

6  basically with the church and the church is private and that

7  the church called in the cops or the DA.  The DA has immunity,

8  the AG has immunity.  The mayors were not even anywhere near

9  Cornerstone Baptist Church so they're not personally involved

10  in anything going on here.  You're going to have a hard time

11  in my mind.  And I understand that you were going to make good

12  arguments but you're going to have a hard time getting the

13  dispute that you really want to get at resolved by the federal

14  court because I don't know that congress has passed a law that

15  affords you a remedy when you have disputes with your fellow

16  church members about your speech or how they handled matters.

17  I don't think that that's something that congress has given

18  the federal courts powers to adjudicate.  And I'm being up

19  front and speaking to you person to person about that because

20  again, can you imagine how many disputes there are at just not

21  churches, synagogues, mosques, country clubs, you know, on and

22  on and on, all the people that get together in the world that

23  can't get along and then they're going to bring the case and

24  say because somebody called the police that it's a state

25  action.

1          MR. TOWNS:  Well, that wasn't the only thing, but

2     you'll read it.  The only thing that I said, I am claiming

3     that there was coordination --

4          THE COURT:  I understand and I haven't really seen

5     that yet.

6          MR. TOWNS:  And the only other thing I want to say

7     is that she saw the police.

8          THE COURT:  But this is -- look, when the federal

9     court reviews a complaint we have to assume everything that

10    you say to be true.  Okay?  So whether you saw police or you

11    didn't see police I don't think that is necessarily going to

12    be the end of the story here.  It's whether or not under the

13    civil rights law, and again I don't mean to be harping on

14    this, whether or not a disagreement at a church where you were

15    not arrested, you're not disputing, you were not arrested

16    correct?

17         MR. TOWNS:  That's correct, but to say that I was

18    not arrested really is like in Turner, US v. Turner, federal

19    judges received a letter -- wrong case.  Federal judges heard

20    and received information about a blog --

21         THE COURT:  Wait, wait, wait.  We're talking about a

22    criminal case of the judges in Chicago got a death threat that

23    went out on the air.  That's really not the same as this.

24         MR. TOWNS:  No.  I'm just saying the only thing is

25    the principle is that I received a threat and --

1          THE COURT:  I under -- Mr. Towns, I don't want to

2    disrespect you in any way, shape, or form.  I was trying to

3    say to Mr. Fishlin that it's disappointing to me, of course I

4    don't know anybody at Cornerstone, that this couldn't have

5    been sort of like a family dispute that's coming into federal

6    court and we don't deal with family disputes.

7          MR. FISHLIN:  I'd like to speak to that, Your Honor.

8    And that is you're absolutely correct in saying that this

9    should have been handled in not such a drastic way but what

10   Your Honor may not be privy to is the fact that time line of

11   this was extensive.  There were numerous incidents all

12   outlined in the plaintiff's complaint whereas the members of

13   the church lost an ability to just do nothing.  They felt that

14   their harmonious practice of religion was being disturbed over

15   a long period of time.

16         THE COURT:  Look, it sounds to me, Mr. Fishlin, that

17   there are factions in this church because it wouldn't surprise

18   me that Mr. Towns was speaking for more than himself.  He has

19   two other people who used to be members I believe, or maybe

20   still are members, sitting with him.  So again, I'm not going

21   to say that I know better than any of you sitting at the

22   plaintiff's table.  I'm just saying based on the original

23   complaint that was filed here, which I did read, I have not

24   had the chance to read the amended complaint, I am telling you

25   what the problems are with the federal court hearing in

1   deciding a case like this.

2            And the problems are that when it's a private group

3   of individuals who are having a dispute with each other,

4   whether it be about speech, whether it be about finance,

5   whether it be about many other things, it's not necessarily

6   going to be a dispute that the federal courts can reach or

7   resolve.  That they called the police, and I believe you and I

8   believe there was a letter saying that if you come here you're

9   going to be arrested for trespass, I believe everything that

10  was in your complaint.  Again, I don't know that that will

11  make it into a federal constitutional claim under Section 1983

12  because just calling the police is not necessarily going to

13  make it a conspiracy or make it state action because the

14  church called upon the police to try to keep you out of the

15  church.

16           Now again, the reason why I started talking about it

17  isn't there a better way to go here?  The parties have all

18  gone their separate ways for a little while now.  You haven't

19  tried to go back to Cornerstone.  I was asking you what is

20  it -- you have it, right Mr. Towns?

21           MR. TOWNS:  Right, yes.

22           THE COURT:  I was asking you what you were trying to

23  accomplish because if what you're trying to accomplish is to

24  repair this break and see if there's some way that you can

25  resolve this with -- I don't know who the deacons are.  I have

1   no idea who the reverend is.  It sounds like everybody had a

2   very bad day or several days with each other.  But you know in

3   families these things happen and somebody's got to find a way

4   to make an effort to get it back together.  You've heard about

5   mothers and children that don't speak or sisters or brothers

6   that don't speak.  I don't think federal court is necessarily

7   the way to do it.

8            But is there any interest in trying to get this

9   resolved through mediation?  Not the police and not the

10  attorney general.  I don't think that you need to necessarily

11  be in on any mediation, but what about Cornerstone and Mr.

12  Towns?  Is there any hope that there could be a way that we

13  could repair this so that Mr. Towns and the church hierarchy

14  can shake hands and figure out a way to move on in life?  I

15  don't know.  You're the one I'm looking at in the middle.

16  Every time you roll your eyes.  It's worth asking the question

17  though, ma'am, isn't it?

18            REV. DAVIS:  I cannot refrain from expressing

19  myself.

20            THE COURT:  Because you have such strong feelings.

21  I can tell.

22            REV. DAVIS:  Yes, I have.  And if Mr. Fishlin is it?

23            MR. FISHLIN:  Yes.

24            REV. DAVIS:  Had taken the time to ask them that he

25  would find that what he's saying is not the truth.

1          THE COURT:  Well, he has asked somebody but the

2    people he's asked have a different view maybe.

3          REV. DAVIS:  The people that he has asked are

4    Reverend Aker's people.  Okay?  It's not that we have not

5    tried to resolve this issue before it got to this point.  If

6    he does not respond to your request for a church meeting, if

7    he takes a church meeting and turns it into something hostile

8    showing off what he can do and what he can't do, if he

9    declares himself the only order that's going to be followed,

10   he is the pastor, you can't move him, you can't shake him.

11   That's not the church I've been in 60 some years.  He's not

12   the first pastor I've dealt with.  He's not the first pastor I

13   will stop dealing with.  But how does he take the authority to

14   take 2,500 people and just dismiss them to do what he wants to

15   do.

16          The Ecumenical Choir, I was part of it, still part

17   of it.  We raised over $65,000.  We replaced the organ at

18   Cornerstone.  The organ was dedicated, been received, and we

19   were told we had no authority to use it.  We paid for it.  We

20   come to the church, we take top choruses, we have concerts

21   there.  Then all of a sudden you have no authority over

22   nothing because Pastor Aker is the head honcho now and he

23   doesn't deal with anybody.  He does not respond to letters,

24   email, or anything else.  He will walk past you time and time

25   again as if he never saw you when he's in his world.  He's the

1  pastor, it's true, but he's not God Almighty.  Everybody has a

2  right to express their opinion.

3         THE COURT:  And ma'am, I appreciate you telling me a

4  little bit more and again, generally I can only let the person

5  who brought the case speak because that's -- it's his case.

6  But I appreciate it because I was looking at your face and I

7  could tell that you have a lot of wisdom about what's going

8  on.

9         My question though goes back the same way.  What do

10 you think the federal court can do about a pastor who has lost

11 his way or lost the faith of his church members, or at least a

12 number of them?  I'm again going to repeat that I don't know

13 the federal court has been given the power by the congress to

14 do anything about these types of problems.  So when I was

15 telling you about family things and breakdowns in families,

16 the family court, it's not a great option, but that's the only

17 option there is, right?  But that's not --

18        REV. DAVIS:  He'll never go there.

19        THE COURT:  -- but that's not part of federal court.

20 Federal court never deals with family issues.  When somebody

21 dies and everybody is fighting about their property, that's

22 not part of federal court either.  That's all governed by

23 state law and it never comes into federal court.  So there are

24 things that are specifically granted to the federal courts to

25 deal with and then there are things that are only given to the

1  state courts to deal with and that's our system, that's our

2  government.  So I didn't mean to cut you off but I don't know

3  what you expect me to do about this situation.

4          REV. DAVIS:  If you go to the person who has injured

5  you or caused you to feel injured and they refuse to

6  acknowledge that you have a right to speak to them, you have a

7  right to even have a conference with them, then they get their

8  henchmen to close in on your and attack you for something they

9  have no idea went on, how do you deal with it?

10          THE COURT:  Sounds like Russia.  I'm sorry.  Bad

11  joke, but that's what it sounds like.

12          REV. DAVIS:  Worse.  It's worse because this is a

13  church.

14          THE COURT:  I'm not trying --

15          REV. DAVIS:  And it's an open door church.

16  Everybody comes and goes --

17          THE COURT:  I'm really not trying to make light of

18  it.

19          REV. DAVIS:  I understand.

20          THE COURT:  I'm just saying I don't know what your

21  expectations are of how the federal court is supposed to deal

22  with this.

23          REV. DAVIS:  I don't have any legal training.  I

24  respond to --

25          THE COURT:  You'll defer to Mr. Towns.  Okay.  Thank

1  you.

2          MR. TOWNS:  May I just say, Your Honor, the process

3  will move forward.  I am committed to follow the process.  And

4  you'll give -- well --

5          THE COURT:  This is what I was going to propose as

6  the process because first of all, did you get the handbook

7  downstairs when you filed the case, sir?

8          MR. TOWNS:  Yes, ma'am.

9          THE COURT:  Okay.  So you have that.  And the

10  process is that just as you have the right to bring a case,

11  they have the right to defend against the case.

12          MR. TOWNS:  Yes.

13          THE COURT:  And so they were looking to move to

14  dismiss but you had filed your original complaint and asked to

15  amend.  And as I said in the Second Circuit you should be

16  given a chance to amend which is why I told you and we'll get

17  your amended complaint filed.  But I imagine only because I

18  looked at the caption and it includes many of the same actors,

19  and even if you have additional facts or other theories, I

20  imagine that they're still going to intend to move against the

21  complaint.

22          MR. TOWNS:  Right.

23          THE COURT:  And so what I would like to do today is

24  to schedule the motion.  They first had asked a pre-motion

25  conference.  That's what Judge Matsumoto's rules require.

1   Judge Matsumoto generally sets her own motion practice.  But

2   because I was holding an initial conference in the case

3   because I wanted to give you the dignity and respect that you

4   deserve to come into the court to hear what the problems are

5   and hear why it may be a difficult thing to get this type of

6   problem adjudicated in the federal courts, we can set the

7   schedule today so that the defendants will know when they will

8   move by.  And if I'm wrong and you're going to answer the

9   complaint, you'll write immediately upon reviewing the

10  complaint and say the complaint's deficiencies have been

11  resolved, we no longer seek to move to dismiss and instead

12  will set a schedule for you to answer.  Okay?  Does that work

13  for everybody?

14          MR. FISHLIN:  Yes, Your Honor.

15          MR. NOBLE:  Yes, Your Honor.

16          THE COURT:  Okay.  And then you'll get a chance not

17  just to oppose their pre-motion conference request.  They're

18  going to do their motion, so I have to give more time here,

19  and I'll give more time to you.

20          MR. TOWNS:  Yes, Your Honor.

21          THE COURT:  And then when it's full and complete it

22  gets filed and Judge Matsumoto will decide it or refer it to

23  me at her discretion.

24          MR. TOWNS:  Yes, Your Honor.

25          THE COURT:  Okay?  That's the process.

1           MR. TOWNS:  Yes.  May I inquire one procedural

2 matter?

3           THE COURT:  Absolutely, sir.

4           MR. TOWNS:  I submitted the letter requesting that I

5 be allowed to utilize the electronic filing system --

6           THE COURT:  Right.

7           MR. TOWNS:  -- and you denied it without prejudice.

8           THE COURT:  Yes.  The problem is with electronic

9 filing you do get the notice, which I was glad about

10 especially with the snowstorm coming, but generally speaking

11 pro ses are excluded from electronic filing and only attorneys

12 are given access to those accounts.  Why is that?  Because

13 quite frankly to upload this kind of document on ECF is a

14 difficult matter and filing multiple documents, the docket

15 itself -- this is going to be scanned in electronically.  I

16 don't know what your equipment or capacity is, but again,

17 you're getting all orders that the court puts out

18 electronically.  But for filing papers, and especially for the

19 motion, sir, the motion, you're going to serve your opposition

20 on the defendants.  They are going to file your papers with

21 their papers.  They are not going to file their papers without

22 your papers.  They're going to have to electronically scan it

23 in.  So again, the general rule here is that only lawyers who

24 are admitted to the bar in the eastern district get to file on

25 ECF.

1           MR. TOWNS:  Thank you.

2           THE COURT:  Okay?  You get to get electronic notice

3    because you elected that.

4           MR. TOWNS:  Yes.

5           THE COURT:  But as far as filing your opposition,

6    when we set up the schedule, and I'm sorry I'm going to put

7    the onus onto probably the city or the AG to get Mr. Towns'

8    opposition scanned in when the motion is fully briefed.

9    Judge Matsumoto has a rule that the papers on a motion don't

10   get filed piecemeal.  So their motion doesn't get filed until

11   your opposition and their reply.  They're the ones that carry

12   the burden.  They have to prove that there is no claim that

13   can be stated under the law.  The court takes your papers as

14   true but don't start attaching affidavits and all that.

15          And I will tell you, Mr. Fishlin, because you are

16   the only one who probably doesn't know the local rules, under

17   Local Rule 12.1 and 56.2 if you attach anything other, if you

18   are using anything other than the pleadings, so you have to

19   work from the four corners of the amended complaint -- and Mr.

20   Towns I'm quite sure that you know the amended complaint

21   completely replaces the original complaint.

22          MR. TOWNS:  Yes.  Procedurally the amended complaint

23   is only at this time it was my understanding proposed.  You

24   said that we would discuss it.

25          THE COURT:  Right.  But is there any harm in me

36

1   filing this as the amended complaint?

2           MR. TOWNS:  No.  I'm fine with that.

3           THE COURT:  The amended complaint is going to be

4   filed.

5           MR. TOWNS:  Yes.

6           THE COURT:  This is going to be filed, it's going to

7   be your amended complaint.

8           MR. TOWNS:  Okay.  There was one thing that I left

9   out of that.

10          THE COURT:  Which is...?

11          MR. TOWNS:  Which really doesn't matter because it's

12  a state issue.

13          THE COURT:  Okay.  So if it really doesn't matter

14  then we don't need to concern ourselves.  So we're going to

15  set the schedule.  Please be seated, sir.

16          MR. TOWNS:  Thank you.

17          THE COURT:  Okay.  So the amended complaint is going

18  to be filed later today.  You'll be able to get it on ECF.  I

19  will first set the schedule for it assuming that there's going

20  to be a motion made.

21          MR. FISHLIN:  Yes, Your Honor.

22          THE COURT:  30 days sufficient to move?

23          MR. TOWNS:  Oh, I apologize, I forgot.  Mr.

24  O'Loughlin, correct?

25          MR. O'LOUGHLIN:  Yes, sir.

1          MR. TOWNS:  I had indicated by letter to Mr.

2  O'Loughlin that I would withdraw my claim against the attorney

3  general, correct?  Did you get that?

4          MR. O'LOUGHLIN:  I did not get a notice of

5  withdrawal.  I got a letter that said that you acknowledge

6  that you make no claim against the attorney general.

7          MR. TOWNS:  Okay.  Well, I --

8          THE COURT:  You intend to withdraw the claim?

9          MR. TOWNS:  My amended complaint does not include a

10  claim against the --

11          MR. O'LOUGHLIN:  I saw that, Your Honor.

12          THE COURT:  But it does say his name on the caption.

13          MR. TOWNS:  Well, the reason is is because he's

14  required to receive notice pursuant to New York State Civil

15  Rights Act and I was uncertain whether or not that would mean

16  that he would be -- he was still required to be a party in

17  the --

18          THE COURT:  If what you're saying is that you want

19  to voluntarily discontinue your claim against Attorney General

20  Eric Schneiderman, I am quite confident that Mr. O'Loughlin

21  would be glad to draft a one line stipulation for you to sign

22  which would voluntarily dismiss that claim against that one

23  defendant and that will be clear once it's filed on the

24  record.

25          MR. TOWNS:  Yes.

1          THE COURT:  Okay.  And then you don't need to serve

2     him with the motions although again, I'm not sure what he's

3     talking about under state law that you have to be given

4     notice.

5          MR. O'LOUGHLIN:  His amended complaint I believe

6     states claims under the New York State Civil Rights Act which

7     includes a notice requirement to the attorney general's

8     office.  It is not a requirement that they be named as a

9     defendant.  We acknowledge that we have received notice.

10    We're happy to stipulate.  I was actually going to request

11    that the plaintiff so stipulate to dismiss us from the case.

12         THE COURT:  Well, he's stipulating it on the record

13    but to make the docket clear, it would be a one line "I

14    voluntarily discontinue any claim against Attorney General

15    Eric Schneiderman" with the docket number and your signature

16    and then that will go away.  Do you have any problem in doing

17    that, sir?

18         MR. TOWNS:  No, ma'am.

19         THE COURT:  Then I don't need you to draft it.  Mr.

20    Towns will take care of that himself.  And then you just file

21    that and you can do it handwritten downstairs so that you

22    don't have to go home, type it, and then bring it back.  You

23    could just go downstairs and put the docket number of the case

24    and say I Emanuel Towns, plaintiff, hereby voluntarily

25    discontinue any claim against Attorney General Eric

39

1   Schneiderman, sign your name, date it, and put it in.  Okay?

2           MR. TOWNS:  Yes, ma'am.

3           THE COURT:  Very good.

4           MR. O'LOUGHLIN:  Thank you, Your Honor.

5           THE COURT:  Okay.  So for the remaining defendants,

6   30 days from today which I believe because February is a short

7   month brings us to March 2nd.  So March 2nd to move.  And that's

8   the date that they're going to serve you with the motion.

9   It's not going to be filed with the court on that day.

10  They're going to serve you with the motions.  And it doesn't

11  get filed until it's fully briefed.  Do you understand, Mr.

12  Towns?

13          MR. TOWNS:  Yes, Your Honor.

14          THE COURT:  So your amended complaint is going to be

15  filed but you are not going to see their motion until your

16  part, their part is all done and then it's called the fully

17  bundled rule, the entire motion.  Your papers, their papers,

18  their reply gets filed as one bundled motion.  Okay?

19          MR. TOWNS:  Yes, Your Honor.

20          THE COURT:  So 3/2 is when they will serve you.

21  Make sure that he's served by 3/2, okay?  And I would imagine

22  you want the same amount of time, Mr. Towns?

23          MR. TOWNS:  Yes, Your Honor.

24          THE COURT:  Okay.  So that would put us to April 2nd.

25  And again, sir, your opposition to their motion, that's what

1  it's going to be called, plaintiff's opposition to defendant's

2  motion, and it could include both the Cornerstone and the city

3  defendants in one opposition, and you just have to make sure

4  that you serve it on both Mr. Noble and Mr. Fishlin.  Okay?

5           MR. TOWNS:  Yes, Your Honor.

6           THE COURT:  Okay.  Very good.  And make sure they

7  get it by 4/2.

8           MR. FISHLIN:  Yes, Your Honor.

9           THE COURT:  And then two weeks later, so from 4/2

10  that's to 4/16, 15, the fully briefed motion will be filed.

11  And so let me again state it, even though I've said it before,

12  they're going to take your papers as well as their papers and

13  electronically file them on 4/16.  If you come to court or you

14  look online by 4/17 both your papers and their papers will be

15  on the docket.  The judge doesn't look at it before it's fully

16  briefed.  Okay?

17           MR. TOWNS:  Yes, Your Honor.

18           THE COURT:  So 4/16 the full briefed motion will be

19  filed.  Mr. Fishlin, you could speak to the court counsel

20  lawyers.  They are used to scanning things in in pro se cases.

21           MR. NOBLE:  We'll file it.

22           THE COURT:  Okay.  But Mr. Fishlin will file his own

23  piece of it, not --

24           MR. NOBLE:  Yes, Your Honor.

25           THE COURT:  -- not the city's piece.  Okay?  So

1  remember, he has to get the papers, even though he's getting

2  electronic notice, you're going to serve him and

3  electronically file by 4/16.

4          If upon review of the amended complaint you do not

5  believe there is a basis to move to dismiss, we are going to

6  set an alternative schedule because I don't know what the

7  papers will reveal.  But if there is going to be an answer and

8  not a motion, I would like the answer by February 20th.  So you

9  answer by February 20th, or if you're moving in lieu of an

10 answer under Rule 12(b) you're going to move according to the

11 schedule set forth here.

12         MR. NOBLE:  Yes, Your Honor.

13         THE COURT:  Okay?  So if you are electing to move

14 instead of filing, I'd like there to be an ECF letter so that

15 Mr. Towns and the court know what to expect.  Okay?  So by

16 2/20 the letter to the court.

17         Mr. Towns, is there anything else that the court

18 needs to address today before we adjourn, sir?

19         MR. TOWNS:  No, Your Honor.

20         THE COURT:  Thank you.  Mr. Fishlin, is there

21 anything on behalf of Cornerstone?

22         MR. FISHLIN:  No, Your Honor.

23         THE COURT:  And on behalf of the city, Mr. Noble?

24         MR. NOBLE:  No, Your Honor.

25         THE COURT:  And Mr. O'Loughlin, although we will

1   miss you from these proceedings, Mr. Towns has stated on the

2   record that he intends to stipulate to discontinue the case

3   against Attorney General Eric Schneiderman.  You've

4   acknowledged getting notice of the amended complaint.  So the

5   notice that's required under state law has been completed.

6   And I'll ask you to file that voluntary discontinuance against

7   the attorney general by the end of next week, sir.

8           MR. TOWNS:  Yes, Your Honor.  I will so comply.

9           THE COURT:  Thank you very much.  So with that we

10  are adjourned.  Thank you very much.

11          ALL:  Thank you, Your Honor.

12  [Proceedings concluded at 11:17 a.m.]

13                      * * * * * *

14

15

16

17

18

19

20

21

22

23

24

25

43

1        I certify that the foregoing is a court transcript from

2  an electronic sound recording of the proceedings in the above-

3  entitled matter.

4  _____

6                              Mary Greco

7  Dated:  February 13, 2015